IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FREDRICK CAMPFIELD,                     :
                   Petitioner           :
                                        :
                                        :   CIVIL NO. 1:13-CV-1849
     v.                                 :
                                        :   (Judge Caldwell)
GERALD ROZUM, et al.                    :
                   Respondents          :
                                        :

M E M O R A N D U M

I.   *Introduction*

Fredrick Campfield, an inmate at the State Correctional Institution in

Somerset, Pennsylvania, has filed a pro se petition for a writ of habeas corpus under 28

U.S.C. § 2254 challenging his 1997 conviction for first-degree murder.  He was also

convicted of third-degree murder, voluntary manslaughter, two counts each of attempted

murder, and recklessly endangering another person.  (Doc. 15-3, ECF p. 2,

*Commonwealth v. Campfield*, No. 949 MDA 2002, slip op. at 1 (Pa. Super. Ct. Dec. 4,

2003).  Petitioner is serving a sentence of life imprisonment on the conviction for first-

degree murder.  (*Id.*, ECF p. 4).  He is serving an aggregate sentence of life

imprisonment plus seventeen to thirty-four years on all the convictions.  (Doc. 1, ECF p.

1).

Petitioner's first-degree murder conviction is based on the fact that, as he

himself concedes, he shot the victim in the back of the head.  At the time, the victim was

sitting in the back seat of a car that was being driven away from a bar where a tense

situation had developed.  The situation involved Petitioner and his brother on the one hand and the victim's brother on the other.  Petitioner said he was shooting low in the direction of the car but not at the car, and in self-defense, because he saw a passenger in the car pointing a gun in his direction.  He fired some five or six shots although only one hit the victim.

Petitioner presents two grounds for relief, both bearing on the specific intent to kill required under Pennsylvania law for a first-degree murder conviction.[1]  First, trial counsel was ineffective in not objecting to the prosecutor's prejudicial remarks during his closing argument when he misstated the testimony of the Commonwealth's ballistics expert and when the prosecutor gave a demonstration that was not supported by the expert's testimony.  As a result, the prosecutor's conduct improperly rebutted Petitioner's defense that the rising pattern of shots on the vehicle showed only the natural recoil of the gun as Petitioner repeatedly fired it down low, not that Petitioner had the intent to kill the victim.

Second, trial counsel was ineffective in not having Petitioner and a defense expert on ballistics provide testimony relating to the gun's recoil.  Petitioner asserts that counsel should have had Petitioner testify that not only was he holding the weapon slanting downward but also in a vertical position, meaning the top of the gun was facing upward.  Petitioner's testimony about the vertical holding of the gun would have permitted the defense expert to testify in turn to the recoil effect of a vertically held gun, that a gun

_____

[1] *See Commonwealth v. Chamberlain*, 612 Pa. 107, 129, 30 A.2d 381, 394 (2011).

-2-

held in such a way would recoil upward so that when successive shots are fired, the pattern of the shots would move successively higher.  The expert's testimony would have bolstered Petitioner's defense at trial that he was not intentionally shooting at the victim but that the pattern of shots merely represented the recoil effect.

II.  *Standard of Review*

Under 28 U.S.C. § 2254, a state prisoner can seek federal habeas relief from his conviction for violations of federal law.  *Swarthout v. Cooke*, ____ U.S. ____, ____, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011).  In pertinent part, as stated in 28 U.S.C. § 2254(a), the petitioner can seek relief "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

When a petitioner seeks relief on federal claims adjudicated against him by the state courts, habeas review of the state courts' resolution of the claims is governed by 28 U.S.C. § 2254(d)(1) and (d)(2).  Under subsection (d)(1), we may grant the writ if the state courts' adjudication of the claims was contrary to clearly established Supreme Court precedent or an unreasonable application of that precedent.  A state court judgment is "contrary to" Supreme Court precedent when it is "diametrically different, opposite in character or nature, or mutually opposed" to "clearly established" decisions of the United States Supreme Court.  *Williams v. Taylor,* 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000).  "A state-court decision will also be contrary to" Supreme Court "precedent if the state court confronts a set of facts that are materially indistinguishable

from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent." *Id.* at 406, 120 S.Ct. 1519-20.

"[A] state court ruling is considered an 'unreasonable application' if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply." *McMullen v. Tennis,* 562 F.3d 231, 236 (3d Cir. 2009)(cited cases omitted). "The unreasonable application test is an objective one - a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." *Jacobs v. Horn,* 395 F.3d 92, 100 (3d Cir. 2005)(cited cases omitted). If "'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief cannot be granted. *Harrington v. Richter,* ____ U.S. ____, ____, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011)(quoted case omitted).

Under subsection (d)(2), we may grant the writ if the state courts' adjudication of the claims "resulted in a decision that was based on a unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "A state court decision is based on 'an unreasonable determination of the facts' only if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding.'" *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013)(quoted case omitted). State-court fact finding "is presumed to be correct." 28 U.S.C. § 2254(e)(1). The

petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

III.   *Discussion*

A. *The Petition Is Timely*

Respondents first argue that the petition is barred by the one-year statute of limitations for filing section 2254 petitions. *See* 28 U.S.C. § 2244(d)(1).  In pertinent part, the statute begins to run from the date the judgment of conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review. *See Wall v. Kholi*, ____ U.S. ____, ____, 131 S.Ct. 1278, 1283, 179 L.Ed.2d 252 (2011) (citing 28 U.S.C. § 2244(d)(1)(A)); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 410, 125 S.Ct. 1807, 1810, 161 L.Ed.2d 669 (2005).

The limitations period is subject to equitable tolling, *Jenkins v. Superintendent of Laurel Highlands,* 705 F.3d 80, 88-89 (3d Cir. 2013), and to statutory tolling.  *Id.* at 85.  Statutory tolling occurs during the time "a properly filed application for State post conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ."  28 U.S.C. § 2244(d)(2); *Swartz v. Meyers,* 204 F.3d 417, 419 (3d Cir. 2000).

Statutory tolling applies to those periods when an application for discretionary review is pending in a state appellate court from the denial of postconviction relief, *see Kindler v. Horn*, 542 F.3d 70, 77 n.5 (3d Cir. 2008)(noting that the petitioner's PCRA petition was pending at least through the date the Pennsylvania Supreme Court

-5-

denied his petition for review), *rev'd on other grounds*, *Beard v. Kindler,* 558 U.S. 53, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009).  It also applies to the time period for seeking state-court appellate review from the denial of postconviction relief even if such review is not sought.  *Jenkins*, *supra*, 705 F.3d at 85 n.4.

A properly filed state petition "is one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998).  A PCRA petition that is filed untimely is not "properly filed" so as to suspend the running of the limitations period, see *Pace v. DiGuglielmo,* 544 U.S. 408, 417, 125 S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005), and whether a state petition was untimely is a matter of state law that cannot be reconsidered by a federal habeas court.  *Satterfield v. Johnson,* 434 F.3d 185, 192 (3d Cir. 2006)("If a state court determines that a petition is untimely, that would be the end of the matter, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was 'entangled' with the merits.")(internal quotations omitted).

The parties' filings reveal the following on the timeliness issue.  On July 7, 2000, the jury found Petitioner guilty.  On September 27, 2000, he was sentenced.  After Petitioner's first direct appeal was dismissed for failing to file a brief, his direct-appeal rights were restored, and on December 4, 2003, the Pennsylvania Superior Court affirmed his conviction.  Petitioner did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

On October 17, 2002, Petitioner filed his first postconviction petition under the Pennsylvania Post Conviction Relief Act (PCRA).  42 Pa. Con. Stat. Ann. § 9541-9546.  Thereafter, he filed "a lineage of amendments" to the petition.  (Doc. 1, trial court's PCRA opinion, ECF p. 19).  On November 10, 2010, the trial court denied relief.  On Petitioner's appeal, the superior court reversed and remanded for a "*Grazier* hearing."[2]  That hearing was held on March 8, 2012, and Petitioner was allowed to proceed pro se.

Petitioner again filed several amendments to his PCRA petition, among them one filed on June 21, 2012, which raised the two claims presented in the instant 2254 petition.  On August 24, 2012, the trial court denied relief.  It decided that the June 21 filing was untimely under the statute of limitations for filing PCRA petitions under state law, which generally requires that the petition be filed within one year of the judgment's becoming  final.  (Doc. 1, trial court's PCRA opinion, ECF pp. 23, 25).  The court cited the superior court's December 4, 2003, affirmance on direct appeal as the indication of finality.  Respondents rely on the trial court's ruling in arguing that the 2254 petition is untimely.

If the June 21, 2012, filing did raise the two claims for the first time, and was untimely under state law, the current 2254 petition would be untimely as the instant petition was filed on July 8, 2013, well more than one year after the judgment would have become final under federal limitations law.

---

[2]  When a defendant states he wants to proceed pro se on appeal or in postconviction proceedings a *Grazier* hearing is held to determine if the decision is knowing, intelligent and voluntary.  *See Commonwealth v. Grazier*, 552 Pa. 9, 12-13, 713 A.2d 81, 82 (1998).

However, Petitioner appealed the trial court's denial of postconviction relief. On May 31, 2013, the superior court affirmed the trial court's order, but in doing so, it disagreed with the trial court that the two claims had been raised untimely, holding that the claims had been raised in Petitioner's original PCRA petition, as well as in the June 21, 2012, filing.  (Doc. 1, superior court's PCRA opinion, ECF pp. 38, 40).[3]  We disagree with Respondents' contention that the superior court did not disturb the trial court's ruling that the PCRA claims were untimely.

We are bound by the superior court's timeliness ruling.  Whether a state petition was untimely is a matter of state law that cannot be reconsidered by a federal habeas court.  *See Satterfield, supra,* 434 F.3d at 192 ("If a state court determines that a petition is untimely, that would be the end of the matter"); *Darden v. Sobina*, 477 F. App'x 912, 917 (3d Cir. 2012)(nonprecedential)(it would be undue interference for a federal court to revisit a state court's ruling on the untimeliness of a PCRA petition); *Campbell v. Henry*, 614 F.3d 1056, 1057 (9th Cir. 2010)(if a higher state court determines that a claim is timely, it is timely under state law).

Since the claims were timely under state law, the federal limitations period was statutorily tolled while postconviction proceedings were pending in state court, from October 17, 2002, when the first PCRA petition was filed, through May 31, 2013, when the superior court issued its PCRA opinion.  It was also tolled until July 1, 2013, the

---

[3]  On page 5 of its opinion, Doc. 1, ECF p. 38, the superior court stated that the trial court had denied "relief on the two claims Appellant had raised in his original PCRA petition and in his original appeal to this Court."

-8-

expiration of the thirty-day period Petitioner had to appeal to the state supreme court from

the superior court's ruling.  In fact, since Petitioner's direct appeal was decided after he

filed his PCRA petition, the statute did not begin to run until July 1, 2013.  The instant

petition was filed on July 8, 2013, well within the one-year limitations period, and was

thus timely.

B.   *Trial Counsel Was Not Ineffective in Not Objecting to the*
     *Prosecutor's Remarks and Demonstration During His*
     *Closing Argument*

Petitioner claims that trial counsel was ineffective in not objecting to the

prosecutor's remarks and demonstration during his closing argument.  He contends the

prosecutor acted improperly because he misstated the testimony of the Commonwealth's

ballistics expert.  Petitioner maintains the prosecutor's conduct improperly rebutted

Petitioner's recoil defense, that the rising pattern of shots on the vehicle showed that

Petitioner did not have the intent to kill the victim because the pattern showed only the

natural recoil of the gun as Petitioner repeatedly fired.

The Commonwealth's ballistics expert was Corporal Ernst Baltimore of the

Pennsylvania State Police.  (Doc. 23-2, ECF p. 2).  Petitioner challenges the following,

highlighted, remarks from the prosecutor's closing argument concerning Corporal

Baltimore's testimony:

> *Then he [Corporal Baltimore] talked about this – we talked*
> *about the recoil a little bit and recoil is affected by the way in*
> *which the gun was held.  If you hold it this way the gun goes*
> *down.  If you hold it this way the gun goes up so it all depends*
> *on how you are looking at the gun*, but we talked about like

> the consciousness that this is a gun that you don't just
> squeeze the trigger and rounds fire.  You have to squeeze,
> release, squeeze, release, squeeze, release, until you fire six
> shots.  That's consciousness. It's not like an automatic where
> you just depress the trigger and shots continually fire until you
> stop depressing.

(Doc. 22-3, ECF pp. 81-82)(brackets and emphasis added).  Petitioner asserts the

improper demonstration occurred when the prosecutor held the gun in a horizontal

position when first telling the jury "if you hold it this way" and in a vertical position the

second time he told the jury "if you hold it this way."[4]

In pertinent part, Corporal Baltimore testified as follows when questioned

about recoil.  On cross-examination by defense counsel, the following exchange took

place:

> Q. Is there recoil after each shot?
>
> A. Yes, there is.
>
> Q. Is the natural recoil itself, the recoil effect, if you're holding
> it with one hand out, the recoil generally sends it up.  Is that
> correct?
>
> A. Correct.

---

[4]  Petitioner presents the record this way:

Then he [firearm expert Corporal Baltimore] talked about this – we talked
about the recoil a little bit and recoil is affected by the way in which the gun was
held.  If you hold it this way the gun goes down (horizontal demonstration to the
jury).  If you hold it this way (vertical demonstration to the jury) the gun goes up
so it all depends on how you are looking at the gun.

(Doc. 2, ECF p. 10).

Q. Now, each shot would send it up.  Is that correct?  Each shot has a recoil?

A. Each shot has a recoil.

Q. With the general effect that the recoil being up, each shot and each recoil from a shot would be going up, the recoil?

THE COURT: Your question, for the record, demonstrates that the pistol is being held vertically, correct?

BY MR. SHIELDS: Yes.

A. Are you saying without any counter forces that the gun would just continue to come up?

Q. I'm saying each shot has a recoil.

A. Right.

Q. And each recoil goes up?  I may have already asked that.

A. Right.

(Doc. 23-2, ECF pp. 46-47).  Corporal Baltimore also testified at another point that the

recoil would drive the gun to the rear.  (Doc. 23-2, ECF p. 30).

On redirect examination, the prosecutor asked Corporal Baltimore if loss of

accuracy with rapid fire of a gun depended on the individual.  The expert responded that

it would, listing the factors that would affect accuracy, including "how firm they're locking

their elbow out."  (Doc. 23-2, ECF pp. 48-49).  The questions continued:

Q. When you say blocking (sic) your elbow, you're pointing towards the top of your elbow towards the sky and the elbow joint pointing towards the ground?

A. Right.

Q. As opposed to sideways or another way?

A. Again, that would be a variable, the position of the person's arm, the position of the person.

Q. That would depend on the accuracy or recoil would all be affected by that?

A. The accuracy would be affected most by the human involved in shooting the gun, and all of the variables that are associated when people fire guns.

(Doc. 23-2, ECF p. 49).[5]

In asserting that the prosecutor's remarks were improper, Petitioner relies on the latter exchange, arguing that the expert only testified about accuracy, not recoil. Petitioner argues that the remarks prejudiced him because two of the Commonwealth's witnesses testified that he held the gun horizontally (sideways) while shooting (Doc. 23-5, Jamal Morrison testimony, ECF p. 23; Doc. 25-1, Dennis Walker testimony, ECF p. 34).[6] Thus, the prosecutor's reliance on non-existent testimony would have allowed the jury to reject Petitioner's defense that the pattern of shots was upward, and as a result of the natural recoil of the gun.

The superior court rejected this claim.  It relied on the reasoning of the trial court that Corporal Baltimore's entire testimony, not just the testimony given on accuracy,

---

[5]  Corporal Baltimore also testified that the gun was a semi-automatic, meaning that the trigger had to be pulled each time for a shot to be fired.  (Doc. 23-2, ECF p. 32).

[6]  Petitioner testified that when he fired the gun, he held it on a downward "slant."  As he stated: "the gun was pointed not parallel with the ground.  It was going slanted, on a slant." He agreed with his counsel's description that it was "[s]ort of like descending, not straight down but low."  (Doc. 29, ECF p. 43).

-12-

supported the factual assertions the prosecutor made in his closing.  (Doc. 1, superior

court PCRA opinion, ECF p. 46).  It added that while Petitioner had concentrated on "a

precise comparison" between Corporal Baltimore's testimony and the prosecutor's

remarks, the court did not consider the "wording difference" material.  (*Id.*).  The court

also relied on the trial court's instruction to the jury that they were the fact finders and that

closing arguments were not evidence.  (*Id.*, superior court PCRA opinion, ECF pp. 46-47;

Doc. 15-4, jury instructions, ECF pp. 11 and 130).  Hence, there had been no

prosecutorial misconduct that trial counsel should have objected to and thus Petitioner's

claim of ineffectiveness lacked merit.[7]

The superior court left ambiguous whether the prosecutor had actually

conducted a demonstration that a gun held horizontally (or sideways) would recoil

downward.  We also cannot locate in Corporal Baltimore's testimony any statement to

that effect, even taking into account that there need not be a "precise comparison"

between his testimony and the prosecutor's closing.  Nonetheless, we cannot conclude

that the superior court's resolution of this claim was contrary to clearly established

Supreme Court precedent or an unreasonable application of that precedent.

Petitioner claims trial counsel was ineffective in not objecting to the

prosecutor's remarks and demonstration.  A prosecutor's remarks during his closing

argument can violate due process.  As noted by Respondents, the governing law is set

_____

[7]   The court also noted that the record was silent as to how the prosecutor held the gun
while he was making his remarks but decided there was no merit in Petitioner's position on the
demonstration because "the prosecutor did not identify the testimony from these witnesses in
the Commonwealth's closing," (Doc. 1, ECF p. 45 n.2).

-13-

out in *Darden v. Wainright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).  *See*

*Parker v. Matthews*, ____ U.S. ____, ____, 132 S.Ct. 2148, 2154, 183 L.Ed.2d 32 (2012).

In *Darden*, the Supreme Court stated that a prosecutor's remarks are improper if they "'so

infected the trial with unfairness as to make the resulting conviction a denial of due

process.'"  477 U.S. at 181, 106 S.Ct. at 2471 (quoting *Donnelly v. DeChristoforo,* 416

U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)).  Among other things, in

*Darden*, the Court did not find the remarks unconstitutional after considering the following

factors: (1) "[t]he prosecutor's argument did not manipulate or misstate the evidence"; (2)

the remarks were invited by or responsive to remarks made by defense counsel; (3) the

trial court instructed the jury that they were to decide the case on the basis of the

evidence alone and the arguments of counsel were not evidence; and (4) the weight of

the evidence was heavily against the petitioner.  477 U.S. at 181-82, 106 S.Ct. at 2471-

72.  Another factor is the context in which the remarks were made.  *Parker*, ____ U.S. at

____, 132 S.Ct. at 2154.

      Here, the prosecutor might have misstated Corporal Baltimore's testimony

concerning the recoil when the gun is held horizontally, but even improper remarks are

not sufficient to establish a *Darden* claim.  *Parker*,  ____ U.S. at ____, 132 S.Ct. at 2155.

Second, the remarks were a response to defense counsel's remarks in his opening (Doc.

22-1, ECF p. 46) and in his closing (Doc. 22-2, ECF pp. 50-51) that the recoil would drive

the gun upward.  Third, the trial court here instructed the jury that it was their recollection

that would control over statements by the lawyers in their closing arguments.  (Doc. 15-4,

ECF pp. 10-11, 13-15).  Fourth, the context of the remarks indicates there was no due process violation.  Immediately after making these remarks about the effect of how the gun is held on the direction of the recoil, the prosecutor shifted to what appeared to be a more significant point, that the trigger had to be pulled for a shot to be fired, implying that intent could be determined more from the need to pull the trigger than from what the recoil effect had on the shots being made.[8]

Sixth Amendment claims for ineffective assistance of counsel are governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  *Strickland* sets forth a two-prong test to establish ineffective assistance of counsel.  First, counsel's performance must be deficient.  *Palmer v. Hendricks,* 592 F.3d 386, 394 (3d Cir. 2010)(citing *Strickland*).  "Performance is deficient if counsel's efforts 'fell below an objective standard of reasonableness' under 'prevailing professional norms.'"  *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013)(quoting *Strickland*).  Second, counsel's deficient performance must have prejudiced the defense.  *Palmer*, 592 F.3d at 394 (citing *Strickland*).

Here, Petitioner fails on the first prong.  Since the prosecutor's remarks did not violate due process, he cannot show that trial counsel's failure to object fell below an objective standard of reasonableness.

---

[8] We will not discuss the weight of the evidence against Petitioner.  We do observe, however, that he admits firing the shots, although he admits only firing low and not at the car, and asserts it was only in self-defense after seeing a passenger in the car with a gun.  (Doc. 29, ECF pp. 42-43; Doc. 29-2, ECF pp. 17-18).

C.  *Trial Counsel Was Not Ineffective in Not Having*
    *Petitioner and a Defense Expert on Ballistics*
    *Provide Testimony Relating to the Gun's Recoil*

Petitioner's second claim is trial counsel was ineffective in not having Petitioner and a defense expert on ballistics provide testimony relating to the gun's recoil. Petitioner asserts that counsel should have had Petitioner testify that not only was he holding the weapon slanting downward but also in a vertical position, meaning the top of the gun was facing upward.  Petitioner's testimony about the vertical holding of the gun would have permitted the defense expert to testify in turn to the recoil effect of a vertically held gun, that a gun held in such a way would recoil upward so that when successive shots are fired, the pattern of the shots would move successively higher.  The expert's testimony would have bolstered Petitioner's defense at trial that he was not intentionally shooting at the victim but that the pattern of shots merely represented the recoil effect.

The superior court rejected this claim.  It first concluded that Petitioner's testimony that the gun was "[s]ort of like descending, not straight down but low," (Doc. 29, ECF p. 43), was consistent with the testimony of two of the Commonwealth's witnesses that he held the gun horizontally (sideways) while shooting.  (Doc. 23-5, ECF p. 23, Jamal Morrison; Doc. 25-1, ECF p. 34, Dennis Walker).  The court of appeals then adopted the trial court's reasoning for rejecting this claim.  As quoted by the superior court from the trial court's PCRA opinion:

> This court's memory of counsel's reasons for not utilizing the testimony of the [defense] firearms expert is vividly clear.  The expert had formulated a report on pistol recoil characteristics based upon the proper use of the weapon, that is, that the

-16-

> pistol would be held in an upright position with the handle
> position perpendicular to the ground.  As it turned out,
> [Appellant] discharged the weapon holding the pistol
> horizontally and parallel to the ground, or at least, as
> [Appellant,] testified on some sort of slant.  The unusual,
> unconventional, pistol position resulted in invalidating all of
> [Appellant's] expert['s] findings because those findings were
> based upon the traditional proper vertical discharge position of
> the pistol.  Trial counsel for [Appellant] made the well[-
> ]reasoned strategic decision not to call the firearm expert
> witness to deny the Commonwealth those effective avenues
> of cross examination which he deemed potentially harmful to
> the defense[.]

(Doc. 1, ECF p. 48, superior court's PCRA opinion)(brackets added by the superior

court).  The superior court concluded by observing that Petitioner "ignores the import of

his own sworn testimony."  (*Id.*).

Petitioner takes issue with the superior court's fact finding here, not

unreasonably arguing that testimony that the gun was aimed (or held) on a downward

slant is not consistent with testimony that it was held horizontally.  Issue could also be

taken with the factual finding, based on the trial court's recollection, that the defense

expert's opinion was only valid if the gun were held vertically (in an upright position) *and*

perpendicular to the ground.[9]

---

[9]   There is no other evidence of record indicating what the expert's testimony would
have been.  At a side-bar conference, trial counsel said the following when informing the court
he would not be calling the expert to testify:

> I will place on the record why I am not calling the witness.  I just
> want to let the Court know that information came (sic) available
> during the course of the trial, and there was testimony during the
> trial that wasn't available to me to provide to my expert.  I
> provided this information to my expert last night when I met with
> him.  At that time he indicated to me that based on that

Nonetheless, Petitioner has to show that his lawyer was ineffective.  As noted above, *Strickland* governs an ineffective-assistance-of-counsel claim, and its "test is demanding."  *Branch v. Sweeney*, ____ F.3d ____, ____, 2014 WL 3293716, at *7 (3d Cir. 2014).  On the first prong of the *Strickland* test, "a court must indulge the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.*, 104 S.Ct. at 2065 (quoted case omitted).  We cannot use hindsight.  Instead, we must "evaluate the conduct from counsel's perspective at the time."  *Id.*, 104 S.Ct. at 2065.

We agree with the superior court that the decision not to call the expert was a reasonable trial strategy.  Regardless of Petitioner's proposed testimony concerning holding the gun vertically even though it was also on a downward slant, the expert could

---

> information he couldn't help us.  That he would actually be
> harmful to our case.  Based on that representation, that's why
> I'm not calling him.

(Doc. 30, ECF p. 4).

The trial court took the reference to information that became available during the trial to mean the testimony of Jamal Morrison and Dennis Walker that the gun had been held horizontally.  The court responded:

> I mean, there is nothing new that came out –- if what I'm
> speculating on, and I don't know this, if what I'm speculating on
> is the manner that the weapon was held and that was new
> information that he didn't have, that was certainly available last
> week.

(Doc. 30, ECF pp. 5-6).

-18-

have been used on cross-examination to highlight the testimony that the gun was really being held horizontally.  Additionally, our reading of the trial record indicates that trial counsel had adopted another strategy to show Petitioner's lack of intent to kill, one based on how quickly the shots had been fired.

Petitioner's recoil defense depended on the jury's accepting his testimony that he had fired at a low angle in self-defense to scare off those in the car and that the upward pattern of the shots (from bumper to victim to dashboard) was only a result of the recoil effect and not a conscious decision to adjust his aim and fire with the intent to hit any of the car's occupants.  The expert's testimony would have bolstered this defense because he would have testified that a gun held vertically recoils upward with each shot.

However, the trial evidence was not consistent on an upward pattern of shots.  Several witnesses testified that the first shot hit the rear window of the car.  (Doc. 24-1, ECF p.3, Jamal Morrison;[10] Doc. 28-1, ECF p. 45, Jack Morris; Doc. 35-1, ECF pp. 25-27, Anthony Tooson).  In an apparent recognition of this adverse testimony, in his closing argument, counsel stated that there was no pattern to the shots, at the same time emphasizing how quickly the shots had been fired:

> Fred sees Nikia Hogan, "T", leaning out the front side of the car, passenger side of the car with a gun and sees him fire the gun.  That's what Fred told you.  At that point Fred reacted. Fred reached for the gun that his brother had, pulled out the gun and fired it.  Fired it instantaneously and fired it quickly. Where did the shots go?  The tire, the trunk, dashboard,

---

[10]  Morrison also testified that he saw a person's head slump down in the car after the first shot.  (Doc. 23-5, ECF pp. 21-22).

victim and two that we must assume since they weren't found in the car missed the car completely.

Now, no one can tell us and several witnesses tried . . . at least one that I remember, tried to tell you that, "Oh, yeah, the first shot hit the victim."

. . . .

So no one can tell us where the first shot went or where the second shot went or where any of the shots went or what order they went in because no one, no one could.  They were too quick.  They happened too quick as I indicated to you before, they happened so fast some of the witness told you there were four shots, some of them said five, some of them said six, I think some even said seven or eight because they were too quick.

(Doc. 22-2, ECF pp. 44-45).[11]

This was a reasonable trial strategy to show that Petitioner lacked the intent

to kill.  Earlier in his closing, counsel stated:

Now, it's also undisputed, and I think everyone agrees, that the shots that my client fired were fired in an instant.  He grabbed the gun and fired it.  There wasn't a grabbed the gun, pause, aim, get into a better position to shoot, every witness has testified he grabbed the gun and the shots were instantaneously fired. . . . There was no pause between the shots, there was no aiming of the gun, it was just squeeze off the shots as fast as you could.

(Doc. 22-2. ECF pp. 15-16).

---

[11]  Petitioner and two witnesses did testify that the shots were fired quickly.  (Doc. 29, ECF p. 43, Fredrick Campfield; Doc. 23-5, ECF pp. 13, 16, 23-24, Jamal Morrison; Doc. 28-1, ECF p. 37, Jack Morris).

We therefore conclude that counsel was not ineffective in not pursuing a recoil defense based on an upward pattern of shots.[12]  We recognize that multiple shots could also be used to show intent but such evidence, including that the shots were fired quickly, cuts both ways.  *See Owens v. Hedgpeth*, No. 10-CV-3833, 2012 WL 3731645, at *5 (N.D. Cal. Aug. 28, 2012)("evidence [of multiple shots] was susceptible of either premeditation and deliberation or an impulsive killing").

IV.  *Conclusion*

We will issue an order denying the section 2254 petition.  The order will also deny a certificate of appealability, based on the analysis in this memorandum.  However, Petitioner is advised that he has the right for thirty (30) days to appeal our order denying his 2254 petition, *see* 28 U.S.C. § 2253(a); Fed. R. App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals.  *See* Federal Rule of Appellate Procedure 22; Local Rule of Appellate Procedure 22.1.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: August 25, 2014

---

[12]  We also note that, in any event, counsel did also argue the upward recoil defense, based on Corporal Baltimore's testimony that a gun held vertically will recoil upward.  Doc. 22-2, ECF pp. 50-51).